UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JULIE A. REGAN**,                                              Chapter 13
    Debtor                                    Case No. 07-12786-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JULIE REGAN AND WILL REGAN**,
    Plaintiffs
v.                                                               Adv. P. No. 07-1308
**BENEFICIAL MASSACHUSETTS, INC.**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. INTRODUCTION**

On January 22, 2009 and January 23, 2009, this Court conducted a trial on Count I of the seven-count Verified Complaint filed by both Julie Reagan and her non-debtor spouse, Will Regan, against Beneficial Massachusetts, Inc. ("Beneficial"), as well as on the Debtor's Objection to Beneficial's proof of claim and Beneficial's Objection to Confirmation of the Debtor's Chapter 13 plan. The Court previously issued a Memorandum and Order

1

with respect to "Defendant Beneficial Massachusetts, Inc.'s Motion for Summary Judgment" filed in this adversary proceeding and entered judgment in favor of Beneficial on all counts of the Verified Complaint, except Count I.  Through that Count, the Debtor seeks an accounting from Beneficial of sums due under a Note and Mortgage that she and her spouse executed on April 22, 2003.  The Court's ruling with respect to Beneficial's claim affects the outcome of the Debtor's Objection to its proof of claim and confirmation of the Debtor's plan.

At the trial, three witnesses testified and seven exhibits were introduced into evidence.  The issue presented is whether Beneficial sustained its burden of providing an adequate accounting of its claim, including the principal amount, interest, attorneys' fees and costs.

**II. FACTS**

In its Memorandum dated September 22, 2008 pertaining to Beneficial's Motion for Summary Judgment, the Court set forth the material facts that precipitated the present dispute. The Court incorporates those facts by reference in this Memorandum.  *See* Regan v. Beneficial Massachusetts, Inc.  (In re Regan), No. 07-1308, 2008 WL 4373001 (Bankr. D. Mass. Sept. 22, 2008).  For purposes of this decision, the Court reiterates its finding that Beneficial is an undersecured creditor.  *See* In re Regan, 2008 WL 4373001 at *1. *See also* 11 U.S.C. § 506(b).  Additionally, the Court observes that, on June 6, 2007, the Debtor proposed a Chapter 13 plan  through which she proposed to cure mortgage arrearages owed to Beneficial and to make regular monthly mortgage payments to it as well. *See* 11

2

U.S.C. §§ 1322(b)(2), (b)(5), and (e).

On May 4, 2007, the Debtor filed her Chapter 13 petition. On June 5, 2007, Beneficial filed its proof of claim. In its proof of claim, it set forth a prepetition mortgage arrearage of $43,182.69 and a total claim of $342,786.93. It attached no back-up documentation to the proof of claim, except two pages of a four-page Mortgage executed by the Debtor and her spouse on April 22, 2003.

The Debtor and Michael Eramo, Esq., who filed Chapter 13 petitions for the Debtor and her husband, testified.[1] The Debtor testified repeatedly that she simply could not understand how Beneficial derived the balance due set forth in its proof of claim dated June 4, 2007, or the balance due set forth by Beneficial in a forbearance agreement which she and her spouse executed. That agreement was in the form of a letter dated October 3, 2005. In the letter, Beneficial, through its attorney, Brian R. Hachey, Esq., of the law firm of Shechtman Halperin & Savage, acknowledged a payment of $5,000 by the Debtor and her spouse on September 30, 2005, and the parties acknowledged an arrearage of $17,485.01 (comprised of past due mortgage payments in the sum of $4,286.86, a tax payment made by Beneficial to the Town of Amesbury in the sum of $15,892.01,[2] and legal fees and expenses in the sum of $1,593). Specifically, in the October 3, 2005 letter, Beneficial

---

[1] More specifically, Attorney Eramo filed a Chapter 13 petition and a Chapter 7 petition on behalf of the Debtor's spouse, as well as a Chapter 13 petition on behalf of the Debtor. The Debtor is represented by different counsel in the instant adversary proceeding.

[2] Beneficial now asserts that it paid the Town of Amesbury the sum of $15,792.01.

3

represented the following:

> This loan is currently in arrears for a total amount of $17,485.01 (the "Arrearage"). This figure is comprised of monthly mortgage payments due and owing in the amount of $4,286.86; tax payment advanced to the Town of Amesbury in the amount of $15,892.01 [sic] and legal fees and expenses due and owing in the amount of $1,593.00.
>
> On September 30, 2005, you delivered to your local Beneficial branch, cash in the amount of $5,000.00, which has been applied to the Arrearage by Beneficial in its sole discretion.

In its proof of claim, as noted above, Beneficial set forth a mortgage arrearage in the sum of $43,182.69 and a total claim of $342,786.93. It attached no documentation to its proof of claim to support its claim for attorneys' fees and costs, although it did attach a portion of the Mortgage granted to it by the Debtor and her spouse with respect to their property located at 10 Unicorn Circle, Amesbury, Massachusetts.

At trial, Attorney Eramo recounted his negotiations with Attorney Hachey in Will Regan's Chapter 13 case and his inability to calculate the arrearage owed by the Debtor and her spouse based upon the documents submitted to him by Beneficial. At the conclusion of his testimony, the Court determined that the Debtor sustained her burden of rebutting the prima facie validity of the Beneficial's proof of claim.

Beneficial relied solely on the testimony of Carolyn Libit ("Libit"), the Department Manager of the Bankruptcy Group for Consumer Lending for HFC Beneficial. She reviewed the Note and Mortgage and three statements reflecting activity in the Debtor's loan account, which will be discussed below.

The Note executed by the Regans was in the original principal amount of

4

$284,543.95. It provided for simple interest at the rate of 8.75% and monthly payments of $2,238.51, excluding a monthly life insurance premium payment of $134.37. It also provided that payments would be paid in the following order: "late charges, interest at the Contract Rate for the actual time outstanding, principal, and insurance." The Court was provided with no evidence relating to the Debtor's obligation to pay the sum of $134.37 for life insurance or consequences stemming from a failure to pay that amount. In particular, the Court was not provided with an agreement whereby the failure to pay life insurance premiums would trigger a default under the terms of the Note and Mortgage.[3]

The Mortgage securing the Note provided for attorney's fees and costs. In paragraph 7, captioned Protection of Lender's Security, the Mortgage provided:

> If the Borrower fails to perform the covenants and agreements contained in the Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, *at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees,* and take such actions as is necessary to protect Lender's interest. . . .
>
> Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the contract rate, shall become additional indebtedness of Borrower secured by this Mortgage. . . .

(emphasis supplied).

The three statements upon which Beneficial relied in support of the amounts set forth in its proof of claim included the following: An "Amortization Schedule," a "FORX

---

[3] At trial, Beneficial's counsel represented that the failure to pay those premiums and late charges were not counted toward Deferred Interest, but Beneficial submitted no evidence to substantiate that representation, and Debtor's counsel contends that interest was computed on late payments that included the insurance premiums.

5

Account Detail," and an internally-generated computer print-out pertaining to the Debtor's loan showing the dates and amounts of payments, as well as "deferred interest."

The Amortization Schedule was a table containing information pertaining to, among other things, the interest rate, the days elapsed between payments, the payment date, the beginning balance or principal amount of the loan, the amount of the payment, the amount of the default, the amount of the payment applied to interest, the amount of "interest shortfall," the amount of the payment applied to principal, the ending balance, and the amount of deferred interest. The Amortization Schedule covered the period from the loan's origination in April of 2003 through June 4, 2007, and showed an ending principal balance of $275,908.56 and deferred interest of $47,211.05. Libit testified that the amount of deferred interest was reduced by $2,050.40, at a per diem rate of $66.14, to obtain the amount of deferred interest due at the commencement of the Debtor's case, namely $45,160.65.

With respect to the Amortization Schedule, Libit admitted that she did not know whether the interest calculation was correct. She explained that the Amortization Schedule was "a simplified history off of our system of record, and our system of record showed how the payment was allocated."

Libit also testified about the FORX Account Detail, which revealed payments to Secured Lending Services ($100) and Source One Services Corporation ($95) for brokers' price opinions of the value of the Debtor's Amesbury property, a payment to LSI Tax Services ($22) for obtaining information about outstanding real estate taxes owed to the

6

Town of Amesbury by the Debtor and her spouse, and legal fees to Shechtman Halperin & Savage totaling $5,708.71, as well as a payment of $15,792.01 to the Town of Amesbury for real estate taxes encumbering the property. The attorneys' fees and all other costs totaled $21,717.72.

With respect to the attorneys' fees, the FORX form revealed the submission of five prepetition invoices to Beneficial by Shechtman Halperin & Savage. The invoices contained the following dates and amounts: October 5, 2005 in the sum of $1,343, November 3, 2205 in the sum of $200, September 20, 2006 in the sum of $375, March 31, 2007 in the sum of $1,264.71, and April 25, 2007 in the sum of $2,526.

According to Libit, the amount set forth on Beneficial's proof of claim was derived as follows:

| | |
|---|---:|
| principal loan amount | $275,908.56 |
| deferred interest | 45,160.65 |
| legal fees and costs | <u>21,717,72</u> |
| Total | $342,786.93 |

Beneficial did not produce any itemization of fees paid to Shechtman, Halperin & Savage, any invoices submitted to it by its service providers, or any canceled checks establishing that the amounts for which it seeks compensation were actually paid. It did not produce any evidence that it notified the Debtor that it had disbursed any of these sums.

With respect to Beneficial's final exhibit pertaining to the Debtor's account, Libit discussed Beneficial's internally-generated computer print-out. That document did not reflect the payment of $5,000 made by the Debtor and her spouse on or around September

30, 2005, although a payment of $4,477 appears on the print-out on September 30, 2005. Libit was not able to explain the discrepancy. The print-out reflected that the last payment made by the Debtor and her spouse in good funds occurred on October 6, 2006, which payment Beneficial applied to the June 2006 payment due in accordance with the terms of the Note reproduced above. Beneficial voided a payment made by the Regans in April of 2007 due to an insufficient funds check. Thus, in Beneficial's parlance, the loan "was due" for the July 2006 payment (in the sum of $1,318) because of the Regans' failure to make regular monthly payments during the course of the loan.

Libit also testified that the prepetition arrearage set forth in its proof of claim was calculated by taking into consideration the total amount of the delinquent payments that were due at the commencement of the case, plus any expenses or advances. Libit indicated that to calculate the arrearage the monthly payment of $2,238.51 was multiplied by the number of months between August 2006 and May of 2007 (nine), plus an outstanding amount of $1,318 relating to the July 2006 payment, for a total of $21,464.59 ($20,146.59 plus $1,318). Libit added the expenses of $21,717.72 to mortgage arrearage amount $21,464.59 to obtain the total mortgage arrearage of $43,182.31, an amount 38 cents less than the arrearage shown on the proof of claim form.

### III. DISCUSSION

A. <u>Arguments of the Parties</u>

The Debtor in her brief points to deficiencies in the evidence submitted by Beneficial. She noted that a reduction in principal requires recalculation of the per diem. Additionally,

8

she stated that, although Beneficial's counsel stated several times at the trial that the life insurance payments and late charges were not included in the proof of claim, his statements were incorrect because interest accrued on those charges. She asked the Court to deduct $1,510.67 from the deferred interest claimed by Beneficial in the amount of $45,160.65 to account for interest accrued on insurance premiums and late charges.

Debtor's counsel prepared a spreadsheet based upon the Debtor's recalculation of the per diem based upon reduction of principal, showing that the principal balance of the loan would be $275,908.19, a figure 37 cents less that the principal sum claimed by Beneficial. Nevertheless, the Debtor recognized that the sum claimed by Beneficial is "substantially correct, the difference being attributable to rounding errors." Noting that Beneficial failed to provided any documentary evidence for the brokers' price opinions, the tax service fee, and the legal fees attributable to Shechtman Halperin & Savage, the Debtor asserted that the Court could not determine the reasonableness of those charges, and, accordingly, they should be disallowed.

The Debtor did not dispute the payment by Beneficial of the real estate taxes it paid to the Town of Amesbury, but she pointed out that the payment history provided by Beneficial failed to reflect the $5,000 payment she and her spouse made in the fall of 2005. Accordingly, she argued that that sum should be deducted from the amount owed for the real estate taxes. Thus, the Debtor calculates the amount owed as follows:

| | |
|---|---:|
| Principal as of the petition date | $275,908.19 |
| Deferred Interest | 45,532.01 |
| Balance of taxes | 10,792.01 |
| TOTAL | $332,232.21 |

The Debtor's calculation fails to reflect her argument that the amount of deferred interest should be reduced by $1,510.67. Although the Debtor did not expressly state how she derived the sum of $1,510.67, the Court's review of Beneficial's Amortization Schedule reveals that the Debtor intended to add the figures set forth in the column captioned "Default/Life Ins Charge." The defaults in that column related to insurance premiums, for which Beneficial accrued interest, total $1,578.03.[4]

Beneficial, in its brief, focused on the reliability of its calculation of principal and interest. Although the Debtor and Beneficial substantially agree with respect to the amount of principal due and owing, they differ on whether the Amortization Schedule includes interest relating to unpaid life insurance premiums and late charges. The Amortization Schedule, as noted above, includes the amount of life insurance premiums due in a column captioned "Default/Life Ins Charge," and late charges are referenced on the far right side of the Schedule.

With respect to legal fees and costs, Beneficial relies upon paragraph 7 of the Mortgage, reproduced above, to support its entitlement to legal fees and costs. It notes that Libit testified that she had no doubt of the accuracy of the expenses and actual payment of the fees and costs. Additionally, it argues it accurately calculated the prepetition arrearage as set forth above. In its brief, it represented that the arrearage is $43,182.31, a sum which is 38 cents less than the amount set forth in the proof of claim because of rounding errors.

---

[4] Debtor appears to have omitted one charge in the sum of $67.16.

B. Analysis

Beneficial is an undersecured creditor. *See* In re Regan, 2008 WL 4373001 at *1. But for 11 U.S.C. § 1322(e), it would not be entitled to interest, reasonable fees, costs and charges pursuant to 11 U.S.C. § 506(b)("To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim , there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose."). Section 1322 (e), however, provides: "[n]otwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Neither Regan nor Beneficial contest the applicability of section 1322(e) and the interplay of 11 U.S.C. §§ 1322(b)(2), 1322(b)(5) and 1322(e). *See* In re Gagne, 378 B.R. 439 (Bankr. D.N.H. 2007).

Pursuant to Fed. R. Bankr.P. 3001(f), "[a] proof of claim properly executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Pursuant to 11 U.S.C. § 502(a), "[a] claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." If an objection is made, "the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount. . . ." Id. § 502(b). *See* In re Perry, 353 B.R. 18, 26-27 (Bankr. D. Mass. 2006).

Once the objecting party produces substantial evidence to rebut the presumption, "the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim." Juniper Dev. Group v. Kahn ( In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir.1993). "Where the proof of claim is not filed in accordance with the Federal Rules of Bankruptcy Procedure, the proof of claim does not constitute prima facie evidence of the validity and amount of the claim, and therefore the burden of proof rests at all times on the claimant." In re Long, 353 B.R. 1, 13 (Bankr. D. Mass. 2006).

There are several issues pertaining to Beneficial's claim. In the first place, the Debtor's payment of $5,000, ostensibly made on September 30, 2005, is unaccounted for in the computer print-out which shows a payment of $4,477 on September 30, 2005 and a payment of $5,000 on September 7, 2005. The payment also is not accounted for in the Amortization Schedule, which also reflects two payments, one made on September 7, 2005 in the amount of $5,000 and one made on September 30, 2005 in the amount of $4,477. Neither accounting references a payment of $5,000 on September 30, 2005.

The Debtor argues that the Court should deduct $5,000 from the amount admittedly due Beneficial for its payment of real estate taxes. The Court disagrees. Although neither accounting record reflects a payment of $5,000 on September 30, 2005, the Court finds that the burden shifted to the Debtor to establish that she and her spouse made two $5,000 payments. The Debtor did not demonstrate that she and her spouse made a payment of $5,000 on September 7, 2005 *and* a payment of $5,000 on September 30, 2005, in addition to the payment of $4,477 on September 30, 2005. The Debtor failed to produce any copies of

12

checks establishing that she and her spouse, in fact, made a $5,000 payment on September 30, 2005 in addition to the $5,000 payment made on September 7, 2005 reflected in Beneficial's accounting records. In view of the weight of the evidence and the Debtor's payment history, the Court concludes that the reference to the September 30, 2005 payment in the forbearance agreement was a typographical error.

The second issue concerns whether Beneficial caused interest to accrue if the Debtor failed to pay her life insurance premium of $134.37 or incurred late charges. It appears at least at the inception of the loan that Beneficial caused interest to accrue because of the Debtor's failure to pay life insurance premiums. Because Beneficial failed to submit competent evidence with respect to the life insurance premiums and, indeed, represented that they were not included in its calculations, the Court shall deduct the sum of $1,578.03 from its claim for deferred interest. Because the burden shifted to Beneficial to establish accuracy of its accounting, and because the Court cannot verify Beneficial's representation that theses sums were excluded in its calculation of deferred interest, the Court finds that it failed to sustain its burden to show that the life insurance premiums and late charges were excluded.

With respect to the attorneys' fees and costs claimed by Beneficial, the Mortgage provides that Beneficial is entitled to costs and *reasonable* attorneys' fees. Although the amount of the legal fees, namely $5,708.71, does not appear, at first blush, to be unreasonable, Beneficial did not provide the Court with any information or documentation about when precisely attorneys' fees were incurred and for what purpose. Furthermore,

it submitted no documentation to support its entitlement to costs. "When a debtor objects to a secured creditor's proof of claim for failing to provide any supporting documentation for its fees and costs, and the creditor continues to fail and refuse to provide such documentation or adduce testimony, the Court has no choice but to find that the fees and costs are unreasonable and unrecoverable." *See* In re Prevo, 394 B.R. 847, 851(Bankr. S.D. Tex. 2008). The court in Prevo added: "[t]he Court expects debtors to pay the full amount that they owe under a note, but the Court must also protect debtors from paying unsupported, and potentially overreaching, charges." Id. This Court agrees with that proposition. Although Libit testified that she believed invoices were paid relative to the attorneys' fees and expenses, her testimony was inadequate to sustain Beneficial's burden to show that the charges, especially the attorneys' fees, were reasonable.

As of October 3, 2005, the Debtor, in accepting the terms of the forbearance agreement, acceded to the Beneficial's statement that $1,593 was due and owing for legal fees and expenses. Those fees were incurred in conjunction with foreclosure proceedings and delinquent real estate taxes in the sum of $15,792.01. The Court finds that the Debtor, in executing the letter agreement, waived her ability to challenge those fees. With respect to the balance of the fees, however, this Court refuses to speculate on their reasonableness. Beneficial has been advised of the Debtor's request for an accounting of the amount she owes since the fall of 2005. Now, over three and a half years later, the accounting is still deficient for failure to submit documentation in support of the fees and charges. In failing to file a proof of claim in accordance with the federal and local bankruptcy rules, the

14

burden shifted to Beneficial to establish each and every aspect of claim. The Court finds that, at a minimum, it was obligated to produce invoices from Shechtman Halperin & Savage and the other service providers to support its entitlement to reasonable attorneys' fees after the burden shifted to it in this proceeding. Accordingly, the Court shall disallow attorneys' fees in excess of $1,593 and all expenses. Thus, the Court computes Beneficial's claim as follows

| | |
|---|---|
| Principal | $275,908.19 |
| Deferred Interest | 43,582.62 |
| Attorneys' Fees | 1,593.00[5] |
| Real Estate taxes | 15,792.01 |
| TOTAL | $336,875.82 |

The Debtor did not specifically address the amount of the arrearage or the methodology employed to calculate it. Accordingly, the Court finds that the Debtor owed prepetition mortgage arrearages comprised of missed payments of $21,464.59, plus costs and expenses, as calculated above, in the amount of $17,385.01 for a total of $38,849.60.

**IV. CONCLUSION**

In view of the accounting provided by Beneficial, the Court shall enter an order sustaining the Debtor's Objection to Beneficial's claim in part, and allowing the claim in the sum of $336,875.82. The Court also shall enter an order overruling Beneficial's Objection to Confirmation of the Debtor's proposed plan. Nevertheless, because the amount of the mortgage arrearages set forth in the Debtor's plan differs from the amount found above,

---

[5] The Court notes that this sum is higher than the October 5, 2005 invoice submitted to Beneficial by Shechtman Halperin & Savage, which was in the sum of $1,343.

15

the Court shall require the Debtor to file an amended Chapter 13 plan.

                                        By the Court

                                        *[signature]*

                                        Joan N. Feeney
                                        United States Bankruptcy Judge

Dated: April 21, 2009
cc: David G. Baker, Esq., Michael T. Eramo, Esq., Jeffrey Patterson, Esq., Carolyn Bankowski, Esq., John Aquino, Esq.